## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SCOTT MOORE, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case. No. 18-cv-2329-CM-KGG |
| | ) | |
| KRIS W. KOBACH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

COMES NOW the Defendant, Kris Kobach, and submits the following arguments and

authorities in support of his motion to dismiss Plaintiffs Complaint for failure to state a claim

upon which relief can be granted.

## NATURE OF THE CASE

Plaintiffs are three Kansas residents and registered voters.  They filed this suit against

Kris Kobach in his official capacity as Kansas Secretary of State ("KSOS") and in his individual

capacity ("Kobach").  Their complaint asserts two causes of action: Count 1 pursuant to 42 USC

§1983 for violations of their Constitutional right to informational privacy; and Count 2 for

violations of KSA 75-3520.

## ALLEGATIONS

1.  Former Kansas Secretary of State Ron Thornburg launched the Interstate Voter

    Registration Crosscheck Program ("Crosscheck") in 2005.  (Doc. 1, ¶ 44)

2.  Defendant began operating Crosscheck in 2011.  (Doc. 1, ¶ 9)

3. From 2012-2017 the Arkansas Secretary of State's Office hosted the file transfer protocol ("FTP") server.  The KSOS office assumed responsibility for hosting the site in late 2017.  (Doc. 1, ¶ 5)

4. On or about November 20, 2017, the Florida Department of State Division of Elections ("FDE") released over 200 emails in response to an open records request submitted by Anita Parsa concerning Florida's participation in Crosscheck.  (Doc. 1, ¶ 114)

5. One of those was an email KSOS sent to FDE in January 2013 with an attachment which identified as potential double registrants 945 Kansas voters, including Plaintiffs, by name, date of birth, address, and partial social security number.  (Doc. 1, ¶¶ 14, 22, 23, 24, 93-95, 102-104, 110-112)

6. When released by FDE in November 20, 2017, the attachment was not encrypted or password protected.  (Doc. 1, ¶ 115)

7. Defendant sent the list of potential double registrants to FDE as an unencrypted email attachment on April 29, 2013.  (Doc. 1, ¶¶ 94, 103, 111)

## ARGUMENTS AND AUTHORITIES

### Standard of Review

A complaint must contain enough facts to state a claim for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 555-56, 127 S. Ct. 1955 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

The court need not accept as true those allegations that state only legal conclusions or rest

on mere speculation, conjecture, or surmise.  *Iqbal*, 556 U.S. at 678; *See Southway v. Central Bank of Nigeria*, 149 F. Supp. 2d 1268, 1274 (D. Colo. 2001).  Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk*, *L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (emphasis omitted).

### <u>42 USC §1983</u>

**There is no Constitutional Right to Informational Privacy**

That there is no Constitutional right to informational privacy was most recently explained in *Leiser v Moore*, 2018 WL 4224663 (10th Cir, September 6, 2018):

> "As we proceed to explain, our precedents relied on a reasonable misreading of two Supreme Court opinions as establishing a right to informational privacy. More recently, however, the Supreme Court has made clear that the existence of such a right is an open question and it has not abandoned a third precedent which suggests that any right to informational privacy is limited."

2018 WL 4224663 at \*3

> "Much more importantly, in 2011 the Supreme Court made clear that any statements in its precedents regarding a constitutional protection against government disclosure of personal information were dicta. The opinion in *NASA v. Nelson*, 562 U.S. 134, 138, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011), began as follows: "In two cases decided more than 30 years ago, this Court referred broadly to a constitutional privacy 'interest in avoiding disclosure of personal matters.' *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Nixon v. Administrator of General Services*, 433 U.S. 425, 457, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)." "[R]eferred broadly to" is not the sort of language courts use to designate holdings. Then, after noting that the plaintiff federal contract employees were relying on *Whalen* and *Nixon* to challenge questions on forms to be filled out by employees and their references, the Court wrote: "We assume, without deciding, that the Constitution protects the privacy right of the sort mentioned in *Whalen* and *Nixon*." *Id.* Why "assume" something if it had already been resolved by precedent? There would be no need to merely assume the proposition, and there would be nothing to reserve decision on, if the Supreme Court had previously held that the Constitution protected such privacy rights. (In this regard, it is important to remember that the constitutional claims in *Whalen*

and *Nixon* were both rejected by the Court.) Later in its *NASA* opinion, the Court made the point explicitly, saying: "As was our approach in *Whalen*, we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance." *Id.* at 147, 131 S.Ct. 746. Thus, it can no longer be said in the context of government disclosure of information that "[t]here is *no dispute* that confidential medical information is entitled to constitutional privacy protection." *A.L.A.*, 26 F.3d at 990 (emphasis added). The Supreme Court has stated that this is an open question—it has never held that there is a constitutional right to prevent government disclosure of private information."

*Id*. at *5

"Indeed, the concurrence of Justice Scalia in *NASA* shows that the existence of a right of informational privacy is a matter of vigorous dispute. The concurrence asserted that not only is there no Supreme Court precedent on the existence of a constitutional protection against government disclosure of personal information, but that *Paul* forecloses the existence of such a right:

> Our due process precedents, even our "substantive due process" precedents, do not support *any* right to informational privacy. ... [W]e have held that a government act of defamation does not deprive a person "of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). We reasoned that stigma, standing alone, does not "significantly alter" a person's legal status so as to "justify the invocation of procedural safeguards." *Id.* at 708–709, 96 S.Ct. 1155.

*Id.* at 161–62, 131 S.Ct. 746 (Scalia, J., concurring) (emphasis added) (original brackets omitted). Justice Scalia then argued that if the Constitution does not provide protection against public disclosure of *false* information, it makes no sense to say that it protects against disclosure of information that is true: "If outright defamation does not qualify, it is unimaginable that the mere disclosure of private information does." *Id.* at 162, 131 S.Ct. 746. The majority opinion in *NASA* did not take issue with the substance of Justice Scalia's discussion of the existence of the constitutional right; it responded only by saying that this was not the case to resolve the matter. *See NASA*, 562 U.S. at 147 n.10, 131 S.Ct. 746. ("The opinions concurring in the judgment ... would ... provide a definitive answer to the question whether there is a constitutional right to informational privacy. ... There are sound reasons for eschewing [that] course.")."

*Id.* at *6, fn 3.

Because there is no Constitutional right to informational privacy, Count 1 fails to state a

claim upon which relief can be granted.

**Defendant is entitled to Qualified Immunity**

Qualified immunity protects government officials from individual liability under § 1983 unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).

> Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.  [The court does] not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Stanton v. Sims*, 134 S. Ct. 3, 4–5 (2013) (internal citations and quotations omitted).

When a defendant raises qualified immunity, the plaintiff must show: (1) the defendant's actions violated a constitutional or statutory right; and (2) the right violated was clearly established at the time of the conduct at issue.  *Schroeder*, 311 F. Supp. 2d at 1250.  The court may consider either prong of the qualified immunity test first.  *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

Even if this Court concludes that there is a Constitutional right to informational privacy, it is not clearly established so as to overcome qualified immunity.  Unless there is a controlling Supreme Court or Tenth Circuit decision on point or a "robust consensus of cases of persuasive authority" declaring the conduct to be wrongful, qualified immunity must apply.  *Stewart v. Beach*, 701 F.3d 1322, 1331-32 (10th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  *Leiser v Moore*, 2018 WL 4224663 (10th Cir, September 6, 2018) shows that there is no controlling Supreme Court or Tenth Circuit decision on point.

## KSA 75-3520

### This Court Lacks Jurisdiction

Because there is no Constitutional right to informational privacy, there is no federal question jurisdiction under 28 USC § 1331.  Absent federal question jurisdiction, there is no supplemental jurisdiction under 28 USC § 1367(a).

### This Court Should Decline to Exercise Supplemental Jurisdiction

In the event that Count 1 is dismissed on the grounds of qualified immunity, this Court should decline to exercise supplemental jurisdiction pursuant to 28 USC § 1367(c)(3).

> "[W]here pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction." *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (internal quotations and citations omitted).

*Mendy v. AAA Ins.*, 2017 WL 4422648, at \*10 (D. Kan. Oct. 5, 2017)

### KSA 75-3520 does not apply

This statute does not apply for two reasons.  First, KSA 75-3520(a)(1) applies to "documents available for public inspection or copying".   The list of 945 individuals who are possibly registered to vote in both Kansas and Florida sent by email from the Office of the Kansas Secretary of State to the Florida Department of State Division of Elections is not a document made available for public inspection or copying by KSOS.  Second, KSA 75-3520(a)(2)(6) exempts secretary of state filings from the requirements of (a)(1).

### CONCLUSION

As shown by the above arguments and authorities, Plaintiffs Complaint fail to state a claim upon which relief can be granted for the following reasons: Count 1 fails to state a claim upon which relief can be granted because there is no Constitutional right to informational privacy.  In addition, Defendant is entitled to qualified immunity.  To the extent that this Court

concludes that there is a Constitutional right to informational privacy, any such right is not clearly established so as to overcome qualified immunity.  Count 2 fails to state a claim upon which relief can be granted because this court lacks subject matter jurisdiction over Plaintiffs state law claim.  In the alternative, this Court should decline to exercise supplemental jurisdiction over Plaintiffs state law claim.  Finally, KSA 75-3520, by its terms, does not apply.

WHEREFORE, for the above and foregoing reasons, Defendant Kris Kobach respectfully request this motion be granted an order entered dismissing plaintiffs complaint, and for such other relief as the court deems just and equitable.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

*/s/ Stanley R. Parker*
Stanley R. Parker, KS #10971
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-8423
Fax:    (785) 291-3767
stanley.parker@ag.ks.gov
*Attorney for Defendant Kris Kobach*

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, 2018, the above and foregoing BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record:

Lauren Bonds
ACLU Foundation of Kansas
6701 W. 64th St., Suite 210
Overland Park, KS 66202

Mark P. Johnson
Dentons US LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111
*Attorneys for Plaintiffs*


                                          */s/ Stanley R. Parker*
                                          Stanley R. Parker