# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SCOTT MOORE, | ) | |
| JAMES LONG, AND NANCY | ) | |
| PERRY, on behalf of themselves and all | ) | |
| others similarly situated, | ) | |
| *Plaintiffs*, | ) | Case No. 2:18-cv-02329 |
| | ) | |
| v. | ) | |
| | ) | |
| KRIS KOBACH, in his individual | ) | |
| capacity and official capacity as | ) | |
| the Secretary of State of Kansas, | ) | |
| *Defendant*. | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, through their counsel, file this response in opposition to Defendant Kris Kobach's Fed. R. Civ. P. 12(b)(6) motion to dismiss their complaint for failure to state a claim.  For the reasons set forth below, Plaintiffs respectfully request that this Court deny Defendant's motion in its entirety.

## STATEMENT OF THE CASE

This case concerns Kansas Secretary of State Kris Kobach's reckless dissemination of Kansas voters' sensitive personal information in violation of the Fourteenth Amendment's privacy protections and the Kansas Public Records Act.  Secretary Kobach falsely identified Plaintiffs as possible double registrants because they share a name and date of birth with voters in Florida.  While investigating whether Plaintiffs voted in Florida, Secretary Kobach exposed

their confidential information to the public. Secretary Kobach continues to use unreliable voter fraud detection methods to tag people with common names as illegal voters.  Additionally, Secretary Kobach maintains reckless information transmission methods to communicate private voter information to other states while investigating double registration. Plaintiffs filed this putative class action to enjoin Secretary Kobach from transmitting their confidential voter information through unsecure methods and to seek civil penalties under Kansas state law for past disclosures.

Secretary Kobach filed a Motion to Dismiss (Doc.11) and Memorandum in Support (Doc. 12) arguing that there is no constitutional right to informational privacy.  This position not only conflicts with decades of Supreme Court and Tenth Circuit precedent, it contradicts *Leiser v. Moore*, 2018 U.S. App. LEXIS 25284 (10th Cir. Sept. 6, 2018), the only case Secretary Kobach cites in support of his argument.  Secretary Kobach inaccurately suggests that *Leiser* eliminated the right to informational privacy in the Tenth Circuit when, in fact, the court repeatedly and explicitly declined to reverse the Circuit's cases upholding the constitutional right to privacy in confidential information. The Tenth Circuit continues to recognize that disclosure of private information violates the Constitution and Plaintiffs have plausibly alleged facts that Secretary Kobach's dissemination of their sensitive data violated their privacy rights.

Secretary Kobach also argues Plaintiffs' claims under the Kansas Public Records Act should be dismissed because the information he disclosed was not part of a record open to public inspection and, even if it were, it is exempt from coverage as a Secretary of State filing.  Both arguments ignore or misconstrue the statutory definitions of "open record" and "Secretary of State filing." For the reasons set out below, the Court should deny Secretary Kobach's motion to dismiss Plaintiffs' claims for violation of their Fourteenth Amendment right to privacy (Count I)

and violation of the Kansas Public Records Act (Count II), and allow the Plaintiffs to conduct discovery and seek the Court's approval to be representatives of the class injured by the Secretary's practices.

## STATEMENT OF THE FACTS

Secretary Kobach has managed the Interstate Voter Registration Crosscheck Program since 2011.  Compl. (Doc. 1) ¶¶ 45, 59.  As the operator of the Crosscheck program, Secretary Kobach establishes the information use protocols for voter information shared between states. *Id.* ¶ 11.  As the Secretary of State, Kobach (or the employees in the Secretary's office working under his supervision and implementing his policies) manages Kansas's participation in Crosscheck and sends voter data to other states.  *Id.* ¶¶ 56-57.

Crosscheck compares the voter registration lists of participant states to uncover instances of double registration and double voting.  *Id.* ¶¶ 3, 49.  The program uses only two data points and flags individuals as potential double registrants if they share a name and birth date with a voter in another state.  *Id.* ¶ 52.  The match criteria are so broad that up to 150,000 Kansas voters are identified as possible double registrants in a given year.  *Id.* ¶ 6.  Due to the high false positive rate of initial match results, states must exchange additional information in their voter files to narrow the list of possible double voters.  *Id.* ¶ 7.  Secretary Kobach directs states to use voters' middle names and social security numbers to filter the number of false positive matches. *Id.* ¶¶ 50-52.

A number of states have declined to share their voters' social security numbers with Secretary Kobach.  *Id.* ¶ 58.  Of the twenty-five states participating in Crosscheck in 2017, only half included voter social security numbers in the files submitted to the server.  *Id.*  Some states have withheld social security numbers due to concerns about Crosscheck's server security.  *Id.*

¶¶ 9, 87. Other states refuse to provide their residents' social security numbers because Crosscheck files are a public record in some participant states and their voters' information could be subject to release if shared.  *Id.* ¶¶ 82-83. Secretary Kobach admitted there is no "firm" legal basis for denying public records requests for Crosscheck data.  *Id.* ¶¶ 11-12, 85.  Regardless, Secretary Kobach urges states to share sensitive information in their voter files to facilitate narrowing the thousands of false positive matches yielded by Crosscheck's two- point comparison system—directing states to upload their "entire database" and "please include SSN4."[1] *Id.* ¶¶ 50-52.

Secretary Kobach regularly shares Kansas voters' sensitive information with other Crosscheck participant states.  *Id.* ¶¶ 54-57. In some instances, Secretary Kobach sends Kansas voters' social security numbers to states that may be required to release the information in response to an open records request.  *Id.* ¶ 12, n.15. Secretary Kobach maintains a practice of transmitting voter records containing private information through unsecure methods.  *Id.* ¶ 57.  In particular, he sends lists with voter social security numbers as unencrypted email attachments to other states.  *Id.* Kansas voter information is accessible to anyone who obtains the email, including members of the public who have a right to inspect these emails under state public records laws.  *Id.* ¶¶ 11-14, 16, 85.

Secretary Kobach has publicly stated that he believes sharing voters' social security numbers through unsecure methods would violate state law.  *Id.* ¶ 81. While explaining Kansas's decision to not comply with an information request from President Trump's Election Integrity Commission, Secretary Kobach stated "in Kansas, the Social Security Number is not publicly available…if the commission decides that they would like to receive Social Security numbers to

---

[1]Interstate Voter Registration Data Crosscheck: 2017 Participation Guide, at 2 (Jan. 2017) cited at Compl. ¶47, n. 21.

a secure site in order to remove false positives, then we would double check and make sure Kansas law permits." *Id.*   Secretary Kobach continues to transmit and store voter data through unsecure methods as part of Crosscheck despite acknowledging that doing so violates Kansas law. *Id.* ¶¶ 71, 74.

Florida joined Crosscheck in January 2013. *Id.* ¶ 83. After comparing Florida and Kansas' registration lists, Secretary Kobach flagged Plaintiffs as potential double registrants. *Id.* ¶¶ 14, 90-113.  In January 2013, Secretary Kobach sent a spreadsheet containing Plaintiffs' private information to the Florida Department of Elections as an unencrypted email attachment. *Id.* ¶¶ 13-14. The attachment contained nearly 1000 Kansas voters' names, dates of birth, addresses, and social security numbers. *Id.*   Secretary Kobach asked Florida to review Kansas voters' information and determine which matches were false. *Id.*   Several years later, the email and attachment were released in response to an open records request. *Id.* ¶¶ 93-95, 102-104, 111-113. The attachment was accessible because Secretary Kobach failed to encrypt or password protect the spreadsheet. *Id.* ¶¶ 114-115.

Plaintiffs and the putative class bear the curse of the common name.  As such, Crosscheck will likely flag Plaintiffs as double voters in the future and they face an ongoing risk that Secretary Kobach will expose the confidential information in their voter file. *Id.*  ¶¶ 22-24. While states have opted out of Crosscheck to protect their residents' private voter data, Secretary Kobach has provided Plaintiffs with no such protection. *Id.* ¶¶ 86-89.  As long as Crosscheck is in place in its current form, Plaintiffs must expose their sensitive information in order to vote. The risk of disclosure could easily be remedied if Secretary Kobach adopted minimum industry standard protections for information storage and Crosscheck related transmissions. *Id.* ¶¶ 16, 63-

64.  However, Secretary Kobach has reduced his IT staff and insisted his current procedures are appropriate.  *Id.* ¶ 62.

At least four states have suspended participation in Crosscheck because of the program's security risks.  *Id.* ¶¶ 9, 86-89.  For instance, Idaho Secretary of State Lawrence Denny explained his decision to withhold voter information from Crosscheck, stating "I thought the process was very secure. I had no idea maybe it wasn't. I would just say that it has been very sloppy." *Id.* ¶ 9.  Secretary Kobach has not adopted any measures to protect Plaintiffs' information from future disclosure and their common name makes additional releases probable, if not likely.  *Id.* ¶¶ 62, 69-75.

## QUESTION PRESENTED

The issue before the Court is whether Plaintiffs have plausibly stated claims that Secretary Kobach's disclosure of their social security numbers and personal identifying information violated the Fourteenth Amendment of the Constitution and Kansas Public Records Act.

## ARGUMENT

### A.  Standard of Review

Plaintiffs will survive a motion to dismiss under 12(b)(6) so long as they state a claim to relief that is plausible on its face. *Yeasin v. Durham*, 224 F. Supp. 3d 1194, 1197 (D. Kan. 2016). The court must assume that the complaint's factual allegations are true and construe all inferences from them in the nonmoving party's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). The question is whether, if the allegations are true, it is plausible that the Plaintiffs are entitled to relief under the relevant law. *Christy Sports LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). Though plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully," it is not a "probability requirement." *Iqbal*, 556 U.S. at 678.  A claim converts from possible to plausible when it contains factual allegations that, if proved, would 'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

Plaintiffs have stated Fourteenth Amendment and state law claims based on Secretary Kobach's disclosure of their confidential information. Drawing all inferences in favor of the Plaintiffs, as is required at the motion to dismiss stage, this Court should deny Defendant's motion and permit Plaintiffs to proceed with their claims. Alternatively, if the Court finds that Plaintiffs have failed to state a claim on either count, Plaintiffs respectfully request the opportunity to file an Amended Complaint.

**B.  Plaintiffs Have Alleged Facts to Plausibly Show that Secretary Kobach's Dissemination of their Confidential Information Violates the Fourteenth Amendment Right to Privacy.**

Secretary Kobach argues that voters do not have a privacy interest in the nondisclosure of confidential information. Def's Memo in Supp. of Mot. to Dismiss at 4.  This position directly contradicts the Tenth Circuit and Supreme Court's most recent cases affirming informational privacy rights against government dissemination of sensitive data.  *See NASA v. Nelson*, 562 U.S. 134 (2011); *Leiser v. Moore*, 2018 U.S. App. LEXIS 25284 (10th Cir. 2018).  Indeed, it is inconsistent with the case Secretary Kobach cites in support of his appeal for dismissal. *See Leiser*, 2018 U.S. App. LEXIS 25284, at \*15 (10th Cir. Sept. 6, 2018). Plaintiffs have constitutional protection from government disclosure of their information and have alleged precisely the factual scenario the Court opined would violate privacy protections.

### 1. The Fourteenth Amendment shields private, personal identifying information from government disclosure.

The right to privacy protects confidential information from government intrusion. *Whalen v. Roe*, 429 U.S. 589, 599 n. 25 (1977) (discussing the Supreme Court's distinct jurisprudence relating to information privacy first derived from the "right to be let alone" (*citing Olmstead v. U.S.*, 277 U.S. 438, 478 (1928))). An individual does not forfeit their privacy interest in sensitive information by sharing it with the government. *United States DOJ v. Reporter's Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989) ("privacy encompass[es] the individual's control of information").   The Supreme Court has consistently recognized that the Fourteenth Amendment right to privacy protects confidential data from government misuse and public disclosure. *Whalen v. Roe*, 429 U.S. at 598-600 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977) ("[o]ne element of privacy has been characterized as the individual interest in avoiding disclosure of personal matters").

The Court has also opined that the Fourteenth Amendment only permits the government to collect sensitive data when it can safeguard information from undue disclosure. *See Whalen*, 429 U.S. at 605 (explaining the right to collect confidential information "is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures…in some circumstances that duty arguably has its roots in the Constitution"). In reviewing informational privacy claims, the Court has primarily focused its analysis on the likelihood of unauthorized releases. *See, e.g.*, *Whalen*, 429 U.S., at 600-02 (finding that where a New York law requiring the collection of personal information had in place adequate safeguards, the constitutional right to privacy was not violated). In *NASA v. Nelson*, the Court suggested that NASA's background checks could violate their informational privacy rights if statutory safeguards against disclosure had failed to protect employee information in the past. 562 U.S.

134, 158-59 (denying Fourteenth Amendment claim where "respondents have not cited any example of such a disclosure, nor have they identified any plausible scenario in which their information might be unduly disclosed"). While the mere possibility of a data breach does not undermine statutory protections, inadequate security practices do implicate privacy rights. *See, e.g.*, *Whalen*, 429 U.S. at 605-606 (holding information collection "by a system that did not contain comparable security provisions" could violate the Fourteenth Amendment).

The Tenth Circuit has likewise held that the unauthorized disclosure of private information violates an individual's Fourteenth Amendment right to informational privacy. *See, e.g.*, *Sheets v. Salt Lake County*, 45 F.3d 1383, 1388 (10th Cir. 1995) (holding county violated plaintiff's right to informational privacy by publicly sharing the contents of his wife's diary obtained in connection with an investigation).

Moreover, the Tenth Circuit has held that the right to informational privacy prohibits collection of sensitive information that is not related to a legitimate government interest or lacks sufficient protections against disclosure. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631 (10th Cir. 1988) (holding informational privacy prohibits the government from collecting information "in which it does not have a legitimate and proper interest"); *Kerns v. Bader*, 663 F.3d 1173, 1186 (10th Cir. 2011) (*citing NASA v. Nelson*, "the government's mere collection of information didn't violate an assumed [constitutional] privacy interest when the information was sufficiently protected against public disclosure"). The Supreme Court and Tenth Circuit have recognized the Constitutional right to informational privacy for decades. Secretary Kobach's assertions to the contrary are flat wrong.

Secretary Kobach argues that the Tenth Circuit recently abrogated its' informational privacy precedent in *Leiser v. Moore*. Def. Mem. in Supp. of Mot. to Dismiss at 8. The

9

Defendant errs.  In *Leiser*, the court takes great care to assure that it is not suggesting the court's

past recognition of the right to informational privacy should be overruled. The court explicitly

expressed "no view on whether Plaintiff's constitutional rights were violated." 2018 U.S. App.

LEXIS 25284, at \*4 (10th Cir. Sept. 6, 2018). Further, the court expressly states "this is not to

say that our precedents on this issue are incorrect or that they have been overruled."  *Id.* at \*15.

The court consciously chose to preserve the Circuit's recognition of informational privacy and

limited its analysis to whether the petitioner in that case had a clearly established right to privacy

in his diagnosis of a non-stigmatizing medical condition. Therefore, *Leiser* does not support

Secretary Kobach's argument that voters no longer have constitutional privacy rights in their

personal identifying information.

Plaintiffs also note that *NASA v. Nelson* declined to reverse the Court's precedent on

informational privacy. The Court rejected the approach Justice Scalia urged in his concurring

argument to "simply hold that there is no constitutional right to 'informational privacy.'" 562

U.S. at 162.  Instead, the Court held "we take the same approach here that the Court took more

than three decades ago in *Whalen* and *Nixon*."  *Id.* at 147 n.10. Accordingly, circuit courts have

properly interpreted *NASA* as maintaining past precedent and continue to recognize the right to

informational privacy. *See, e.g., Lee v. City of Columbus*, 636 F.3d 245, 260 n.8 (6th Cir. 2011)

(citing *NASA*, "the Court has not provided us with any reason to take the opportunity to revisit

our past precedents on this matter"); *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir.

2018); *Koren v. Noonan*, 586 Fed. Appx. 885, 889 (3d Cir. 2014); *Big Ridge Inc. v. Fed. Mine

Safety & Health Review Comm'n*, 715 F.3d 631, 649 (7th Cir. 2013); *Kerns*, 663 F.3d at 1886.

### 2.  Secretary Kobach's release and continued reckless maintenance of Plaintiffs' information is precisely the conduct that violates informational privacy rights.

#### a.  Plaintiffs have a Constitutional privacy interest in the information in their Crosscheck file.

Plaintiffs have a constitutional privacy interest in government-maintained data that would cause financial predation or other harm if released.  *Nixon*, 433 U.S. at 458 (holding the right to informational privacy encompasses information in which one has a "legitimate expectation of privacy"); *Sheets v. Salt Lake Co.*, 45 F.3d at 1388 (recognizing that courts have placed financial information "within the ambit of constitutional protection"). Several courts have held that informational privacy protects against the disclosure of social security numbers.  *Greidinger v. Davis,* 988 F.2d 1344, 1354 (4th Cir. 1993)*; In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) ("the indiscriminate public disclosure of SSN's, especially when accompanied by names and addresses may implicate the constitutional right to informational privacy"); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 115 (3d Cir. 1987) (social security number "albeit less intimate than medical information, is entitled to privacy protection").  Plaintiffs have alleged that Secretary Kobach disseminated sensitive information they provided on their voter registration forms. Compl. ¶¶ 12-14. Specifically, Plaintiffs alleged that Kobach released their full name, date of birth, address, and social security numbers in an unencrypted document which exposed them to identity theft and other financial harm. *Id*. ¶¶ 90-113.  Defendant does not dispute that he did this. Armed with the information Secretary Kobach carelessly exposed, even a novice identity thief could inflict significant damage on Plaintiffs. *Id.* ¶¶ 38-39. Plaintiffs' complaint states sufficient facts to support their claim that they have a legitimate expectation of privacy in their social security numbers.

### b.   Plaintiffs have alleged that Kobach actually disclosed their information.

As discussed above, the government's dissemination of confidential information violates the Fourteenth Amendment.  Plaintiffs have alleged that Kobach caused their private data to be disclosed to the general public by transmitting their personally identifiable information in an unencrypted spreadsheet which was accessed through an open records request. *Id.* ¶¶ 114-115. The November 2017 release of Plaintiffs' information was caused by Secretary Kobach's inadequate protections against disclosure. *Id.*  Namely, Kobach's unsecure transmission of their confidential data and failure to impose policies that prevent Crosscheck participant states from releasing Kansas voters' information. *Id.* ¶¶ 55-57. Secretary Kobach's dissemination of voters' personally identifiable information is the type of unauthorized disclosure that the Tenth Circuit has held violates the Fourteenth Amendment and the Supreme Court has noted would infringe on informational privacy rights. *Sheets*, 45 F.3d at 1388; *see NASA*, 562 U.S. at 148.  Thus, Plaintiffs have alleged ample facts to state a claim that Secretary Kobach violated their right to privacy by releasing the sensitive information in their Crosscheck file.

### c. Plaintiffs have alleged facts to support a claim that Crosscheck currently lacks sufficient protections to safeguard their information from disclosure.

As previously addressed, the maintenance of private information without concomitant protections against disclosure can amount to an informational privacy violation.  *Kerns*, 663 F.3d at 1186. Plaintiffs have alleged Secretary Kobach failed to adopt measures to protect their information from disclosure at virtually every step of the Crosscheck process. Compl. ¶¶ 65-75. The complaint alleges that Secretary Kobach maintains a practice of soliciting and sending voter information as unencrypted email attachments. *Id.* ¶ 74.  Further, Plaintiffs allege that Secretary Kobach has refused to adopt a protocol to protect voter information he shares with other states.

*Id.* at 75, 82-85.  Plaintiffs also claim that Secretary Kobach maintains their information on an unsecure server that can be easily accessed given the widespread sharing of passwords and lax network security of the Crosscheck server. *Id.* ¶¶ 69-70.  These facts, if taken as true, are sufficient to state a Fourteenth Amendment informational privacy claim.

### C.  Plaintiffs only argue Secretary Kobach is liable in his individual capacity for his violations of state law.

Plaintiffs do not claim Secretary Kobach is liable in his individual capacity for violating their Fourteenth Amendment privacy rights. Rather, Plaintiffs only allege Secretary Kobach is liable in his personal capacity for Defendants' violations of state law, as argued below. Compl. ¶ 16. Plaintiffs are agreeable to seeking leave to amend the complaint to clarify their claims on each count.

### D.  Kobach is liable for civil penalties under K.S.A § 75-3520.

K.S.A. § 75-3520 prohibits the disclosure and public inspection of any document containing an unredacted social security number where the document also contains an individual's personal information, including their name, address, phone number, or email address. This prohibition applies to all documents that are "available for public inspection" and do not fall within a limited list of exceptions. K.S.A. §§ 75-3520(a)(1), (2). Secretary Kobach contends Plaintiffs' voter registration information that was sent to Florida was not available for public inspection, and that he has therefore not violated K.S.A § 75-3520.  Def. Memo in Supp. of Mot. to Dismiss at 6. That is incorrect for three reasons.

First, the Secretary of State is statutorily required to make voter registration books and voter registration lists publicly available. K.S.A. § 25-2320. Second, the Attorney General's office has made clear that the Kansas Secretary of State's voter database and the voter information it contains, which includes social security numbers, are "public records" possessed by a "public agency" under the Kansas Open Records Act ("KORA"). Attorney General Opinion No. 2017-10, at 2; *see* K.S.A. § 45-217(g)(1); K.S.A. 45-217(f)(1). Third, disclosure of public records to the federal government or to other state governments are still public disclosures under Kansas open records laws. In fact, the Attorney General has specifically identified that giving Kansas voter data to the federal government would be considered a disclosure to "any person" under KORA. Attorney General Opinion No. 2017-10, at 2; *see* K.S.A. § 45-218(a). Having disclosed public voting records to Florida— ostensibly a public disclosure of public records under Kansas open records laws— Secretary Kobach cannot now argue that the document he shared with Florida was not publicly available.

Furthermore, the voter registration data Secretary Kobach sent to Florida is not a secretary of state filing exempt from K.S.A. § 75-3520. The secretary of state filings exception in K.S.A.  § 75-3520(a)(2)(f), when read in conjunction with its preamble, clearly only applies to documents that would be filed with a recorder of deeds. *See* K.S.A. § 75-3520(a)(2) ("… this subsection shall not apply to documents recorded in the official records of any recorder of deeds of the county or to any documents filed in the official records of the court …"). This includes such documents as certificates of incorporation, by-laws, and other ministerial filings that give constructive notice to the public of their contents. *See Data Tree, LLC v. Meek*, 279 Kan. 445, 448 (2005) ("The Register of Deeds' office maintains the following types of recorded documents: […] UCC releases or satisfactions; birth and death certificates; military discharges; federal and

state tax liens […] mortgages […] various judgments or liens […] various deeds, plats, and indexes […] miscellaneous notices and affidavits; […] bankruptcy, probate […] and refiled, corrected documents."). Voter registration records including social security numbers are not documents that are filed with a recorder of deeds, and do not give members of the public constructive notice as to their contents.

Because the voter information Plaintiffs allege Secretary Kobach sent to Florida was publicly available, and no exception applies, Secretary Kobach is liable under K.S.A. § 75-3520 for disclosing Plaintiffs' social security numbers along with other voter information to Florida. [2] Plaintiffs are also be entitled to collect a civil penalty of up to $1000 for each of Defendant's violations. K.S.A. § 75-3520(c). Plaintiffs have plausibly alleged facts showing Secretary Kobach's disclosure of their information to Florida violated the Public Records Act and should be permitted to move forward with their claims on this count.

## CONCLUSION

Plaintiffs have plausibly stated claims for relief under the Fourteenth Amendment and Kansas Public Records Act. Courts have repeatedly acknowledged Plaintiffs' constitutional right to nondisclosure of sensitive information, including the Supreme Court and Tenth Circuit in their most recent decisions regarding informational privacy rights. Moreover, the Kansas Public Records Act clearly prohibits public disclosure of Plaintiffs' social security numbers. The detailed factual allegations of the Complaint are sufficient to state a claim under the applicable

---

[2] The Attorney General has also unambiguously stated that it would be a violation of Kansas open records laws for Kobach to disclose voter registration information including social security numbers to the federal government. Attorney General Opinion No. 2017-10, at 1; *see id.* at 3 n.12 (where the Attorney General references the three separate Kansas public records statutes that bar disclosure of social security numbers). Secretary Kobach's disclosure of the same information to the state of Florida is likewise in violation of Kansas open records laws.

legal standards. Plaintiffs respectfully request that the Court deny Secretary Kobach's motion to dismiss and order such other relief as the Court deems just and proper. In the event that the Court concludes that Plaintiffs have failed to state a claim as to any Count, Plaintiffs request leave to file an Amended Complaint.

Respectfully submitted,


By: /s Lauren Bonds
    Lauren Bonds, KS No. 27807
    Zal Kotval Shroff, KS No. 28013
    ACLU Foundation of Kansas
    6701 W. 64th Street, Ste. 210
    Overland Park, KS 66202
    Phone: (913) 490-4100
    Fax: (913) 490-4119
    lbonds@aclukansas.org


    Mark P. Johnson, KS No. 22289
    Dentons US LLP
    4520 Main Street, Suite 1100
    Kansas City, MO 64111
    Phone: (816) 460-2400
    Fax: (816) 531-7545
    mark.johnson@dentons.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 8th day of October, 2018, which will send a notice of electronic filing to all attorneys of record.

/s/ Lauren Bonds
Lauren Bonds

Attorney for the Plaintiffs